By the statute de donis it is declared that the will of the donor of lands and tenements shall be observed; and the tenements given to a man and the heirs of his body shall go, at all events, to the issue, if there be any; or, if there be none, shall revert to the donor; or the same may be limited over to another person by way of remainder. If land were thus given to a man, and, "if he die without issue," remainder over to another, this remainder need not vest in possession at the time of the death of the donee in tail. It did not depend upon the contingency of his having or not having issue living at the time of his death; but the remainder might thus vest at any future period, when the issue, if the donee left any surviving him, might become extinct. 2 Bl. Com., 113. Thus it vests in possession whenever the issue shall fail, and, as there can be no specific time fixed for that event, we call the period indefinite, and the remainder limited to take effect upon such an estate, we call a remainder to vest in possession after an indefinite failure of the issue in tail. The same rule of construction prevailed when the lands were limited over after a dying without "leaving issue," or "having issue," or "if he shall die and has no issue," or when any similar expression was used. They were all construed to mean an indefinite failure of issue, in order that the "will of the donor might (186) be observed."
Without the same reason, the same rule of construction was adopted in regard to personal property (which was not within the purview of the statute) with some few exceptions. The construction as applied to the two kinds of estates, was followed by very different consequences. The limitation over of lands was lawful, and held to be good, but the courts did not decide that limitations after an indefinite failure of issue, were lawful limitations of personal property. On the contrary, the courts holding a limitation of personal property after a "dying without issue," to mean, after an indefinite failure of issue, adjudged it, *Page 90 
as such, to be unlawful, because it tended to a perpetuity; and they would not therefore allow such a limitation to take effect, but made the whole vest absolutely in the first taker. Leventhrop v. Ashby. 10 Rep. 87.
There can be no doubt but the construction is contrary to the vulgar and grammatical sense of the expressions, but it has become a fixed rule of property. It is a legal and technical construction which it is too late to depart from.
It is true, that in limitations of personals, the Court will lay hold of any clause in a will which affords demonstration that the testator intended to tie up the contingency to the time of the death of the first legatee. But such words as those before adverted to, that is to say, "dying without issue," and others, will not per se
have that effect. The words "dying without leaving issue," in limitations of personals, are an exception from the general rule from the strong import of leaving." 1 P. Wms., 667; 3 Atk., 288; 2 Ves., 610, 180, 125. It has been argued that the word "having"
is (like "leaving") a participle of the present tense, and means and marks the same period of time. It is true that it (187) does in its grammatical and vulgar sense. So does the expression "if he dies and has no issue" — the word "has"
is in the present tense and, grammatically speaking, would tie up the contingency to the time of the death — yet the legal and technical meaning is otherwise. Amb., 398, 478. The same may be said of the words "dying without issue." In their vulgar and grammatical sense, they mean the same as "leaving no issue"; but their technical sense is very different. 2 Atk., 308, Duke of Norfolk's case, 3 Ch. Ca. So that if we were to give a vulgar and grammatical construction to the word "having" in this case, and to the other expressions which mean the same thing, the technical and legal rule of construction which has so long prevailed, would be abolished. However much it is to be regretted that such is the rule, I think we cannot now alter it; and that we must decree for the defendants. It matters not whether the property be viewed in this case as real or personal. If real, the act of 1784 converts into a fee-simple in the first devisee; if personal, the limitation over is too remote, and the same consequence follows, that is, the first taker has the whole.